```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION

Barbara E. Belperio,          )
                              )
             Plaintiffs,      )  Case No. 1:04-CV-831
                              )
     vs.                      )
                              )
Cincinnati Bell               )
Telephone Company,            )
                              )
             Defendant.       )
```

O R D E R

This matter is before the Court on Plaintiff Barbara E. Belperio's motion to remand (Doc. No. 5). For the reasons set forth below, Plaintiff's motion is well-taken and is **GRANTED**.

On November 12, 2004, Plaintiff Barbara E. Belperio filed a complaint for intentional infliction of emotional distress in the Hamilton County, Ohio Court of Common Pleas. The complaint alleges that during her employment with Defendant Cincinnati Bell Telephone ("CBT"), she applied for intermittent leave under the federal Family & Medical Leave Act in order to care for her terminally ill husband. According to the complaint, CBT would only grant Plaintiff intermittent leave up to a total of eight hours per month, and no more, because "she could not tell [CBT] when her husband was expected to die." Complaint ¶ 7. The complaint alleges that Plaintiff had no choice but to resign her position because she could not care for her husband without taking time off from work and because she could not cope with the

1

stress of fighting CBT for more FMLA leave. Id. ¶ 8. The complaint then alleges that CBT "knew of Plaintiff's husband's terminal cancer and knew that denial of approval of FMLA leave would have adverse consequences for Plaintiff both physically and mentally." Id. ¶ 12. Plaintiff states in her motion to remand that the basis for her claim is that CBT intentionally inflicted emotional distress by forcing her to choose between caring for her husband and keeping her job. Doc. No. 5, at 2.

On December 16, 2004, CBT removed the case from state court to federal court on the grounds that interpretation of the FMLA is a necessary element of Plaintiff's state law claim. Plaintiff now moves to remand this case to state court. In support of her motion, Plaintiff argues that she is not asserting an FMLA claim in disguise. Rather, Plaintiff states that she is alleging only that CBT's behavior in connection with her request for FMLA leave meets the elements of intentional infliction of emotional distress under Ohio law. CBT responds that under the FMLA it was entitled to ask of Plaintiff the expected duration of her leave. CBT states that under Ohio law, it cannot be held liable for intentional infliction of emotional distress for performing an act which it is legally entitled to perform. Thus, CBT argues, resolving Plaintiff's emotional distress claim hinges on interpreting the FMLA. Consequently, CBT argues, a federal

question exists and its removal of the case from state court was correct.

Whether the Court has federal question jurisdiction in this case to depends upon application of the well-pleaded complaint rule.[1] The Court in Roddy v. Grand Trunk Western R.R., Inc., 395 F.3d 318 (6th Cir. 2005), succinctly explained the well-pleaded complaint rule:

> In determining whether a complaint arises under federal law we apply the "well-pleaded complaint" rule. Loftis v. United Parcel Serv., Inc., 342 F.3d 509, 514 (6th Cir. 2003). Under this rule "we examine the 'well pleaded' allegations of the complaint and ignore potential defenses." Beneficial Nat. Bank, 539 U.S. at 6, 123 S. Ct. 2058. "[F]ederal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, 482 U.S. at 392, 107 S. Ct. 2425. The well-pleaded complaint rule recognizes that the plaintiff is the master of his complaint. Loftis, 342 F.3d at 515. Accordingly, if the plaintiff chooses to bring a state law claim, that claim cannot generally be "recharacterized" as a federal claim for the purpose of removal. Id. (citing Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S. Ct. 1542, 95 L.Ed.2d 55 (1987)). It is settled law that "a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, 482 U.S. at 393, 107 S.Ct. 2425 (emphasis in original). See also Beneficial Nat. Bank, 539 U.S. at 6, 123 S. Ct. 2058 ("[A] defense that relies on ... the pre-emptive effect of a federal statute will not provide a basis for removal."); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64, 107 S. Ct. 1542, 95 L.Ed.2d 55 (1987) ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded

---

[1] The parties agree that there is no diversity jurisdiction.

>complaint, and, therefore, does not authorize removal to federal court.").

Id. at 322. The exception to the well-pleaded complaint rule is where a federal statute completely preempts state law. Id. For purposes of removal, however, only the Labor Management Relations Act, 29 U.S.C. § 185, the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq., and the National Bank Act, 12 U.S.C. §§ 85 & 86, completely preempt state law.

A case also arises under the laws of the United States if the plaintiff's right to relief under state law requires the resolution of a substantial question of federal law in dispute between the parties. See Franchise Tax Bd. v. Construction Laborers Vacation Trust, 431 U.S. 1, 13 (1983). In Grable & Sons Metal Prod., Inc. v. Darue Eng. & Mfg., 377 F.3d 592 (6th Cir. 2004), the Court stated that a federal question may arise if the plaintiff asserts a right that: 1) involves a substantial question of federal law; 2) is framed in terms of state law; and 3) requires interpretation of federal law to resolve the case. Id. at 595.

In this case, although the complaint refers to the FMLA, it does not explicitly state a claim for relief under the FMLA. Rather, the complaint alleges that CBT intentionally inflicted emotional distress in the course of processing Plaintiff's FMLA leave request. Thus, in determining whether a federal question is present, the question is whether Plaintiff's

4

tort claim can be resolved without interpreting or applying the FMLA.

CBT's position is that under the FMLA it was entitled to inquire of Plaintiff the expected duration of her absence and, because it was so entitled, in cannot be held liable for the distress caused by performing an act which it was legally permitted to perform.  This argument somewhat misses the point, however, because Plaintiff is not claiming that CBT violated the FMLA by asking about the duration of her leave or by restricting her FMLA leave to eight months.  Moreover, CBT's argument really attempts to explain why the complaint fails to state a claim for intentional infliction of emotional distress as opposed to demonstrating why interpretation of the FMLA is required to resolve the claim.

The Court notes that under Ohio law, a defendant cannot be held liable for intentional infliction of emotional distress where all he has done is to insist on his legal rights in a permissible way, even though he is aware that his insistence is likely to cause emotional distress. <u>Foster v. McDevitt</u>, 511 N.E.2d 403, 406 (Ohio Ct. App. 1986).  This is essentially CBT's position.  The flipside of this statement, however, is that a defendant could be held liable for intentional infliction of emotional distress if he insists on his legal rights in an impermissible way. Additionally, the Court observes that in <u>Russ v. TRW, Inc.</u>, 570 N.E.2d 1076 (Ohio 1991), the Supreme Court of

Ohio held that a claim for intentional infliction of emotional distress brought by an at-will employee is not foreclosed merely because his discharge from employment was obtained in a lawful manner.  Id. at syl. 1.  In Russ, although the defendant was entitled to discharge the plaintiff because of his at-will employment status, the Court held that the employer properly was held liable for intentional infliction of emotional distress where it misled the plaintiff into believing that certain pricing practices were legitimate, but then discharging him under circumstances which suggested that he was responsible for them, and then subsequently targeting him as a suspect in an investigation into the pricing practices by the federal government.  Id. at 1082.

Russ, as well as the inverse proposition of law from Foster, indicates that a defendant may be held liable for intentional infliction of emotional distress if it engages in extreme and outrageous conduct during the course of exercising its legal rights.  Thus, in this case, one may assume for purpose of the complaint that CBT committed no violation of the FMLA in restricting Plaintiff's FMLA leave or asking her the expected duration of her leave.  The question then becomes whether CBT engaged in any extreme and outrageous conduct in processing Plaintiff's FMLA leave request.  That analysis, however, does not require any interpretation of the FMLA because we assume there

was no FMLA violation from the outset.  In contrast, in Grable a federal question was presented because the outcome of the plaintiff's quiet title action depended on whether substantial compliance with Internal Revenue Code's notice of seizure procedures was sufficient to convey title.  Grable, 377 F.3d at 596.  The Court could not assume that the IRS complied with the notice provisions because that was the crux of the case.  Here, the crux of the case is not the FMLA itself, but CBT's conduct in processing Plaintiff's request for leave.

While the Court has its own reservations about whether the complaint states a claim for relief for intentional infliction of emotional distress, it is satisfied that resolving the claim does not hinge on any interpretation or application of the FMLA.  Therefore, the Court concludes that the complaint does not arise under federal law.  There being no basis other than federal question for the Court's subject matter jurisdiction, CBT's removal of the case from state court was improper.

Accordingly, Plaintiff's motion to remand is well-taken and is **GRANTED**.  This case is **REMANDED** to the Hamilton County, Ohio Court of Common Pleas.

**IT IS SO ORDERED**

Date   June 7, 2005                     s/Sandra S. Beckwith
                                     Sandra S. Beckwith, Chief Judge
                                        United States District Court